IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 95-00133-WS-C |
| | ) |
| ARTHUR PATTERSON, | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

This matter comes before the Court on defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (doc. 339). In his Motion, defendant Arthur Patterson seeks to avail himself of Amendment 706 to the United States Sentencing Guidelines, which lowered by two levels the base offense level for certain crack cocaine offenses. The United States Sentencing Commission has deemed this amendment to apply retroactively, with an effective date of March 3, 2008. *See* U.S.S.G. § 1B1.10(c); Amendments 712 and 713.

In a Memorandum concerning Patterson's § 3582(c)(2) Motion, the United States Probation Office determined that he is eligible for consideration for a reduction in sentence pursuant to Amendment 706. The Court agrees; however, that finding does not end the inquiry.[1]

---

[1] The Eleventh Circuit has mandated that district courts make two distinct determinations before deciding whether to grant a § 3582(c)(2) motion. "First, the court must substitute the amended guideline range for the originally applied guideline range and determine what sentence it would have imposed. ... Second, in light of the conclusion reached in the first step, the court must consider the factors listed in § 3553(a) and determine whether or not to reduce the defendant's original sentence." *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). Assuming the continuing vitality of this two-step test under the current iteration of § 1B1.10 in a post-*Booker* world, the Court addresses the first prong of the *Vautier* test by finding that, if Patterson were to receive the benefit of Amendment 706, his total offense level would fall from 40 to 38 which, when combined with his criminal history category of IV, would yield an amended guidelines range of 324 to 405 months. If the Court were to depart downward by 40% from the low end of that range, as this Court did in June 2003 (*see* doc. 331) in granting the Government's Rule 35 motion, the modified sentence would be 194 months (as compared to its present level of 216 months). The remainder of this Order addresses whether that modification, some lesser modification, or no modification at all is appropriate in light of the factors prescribed in § 1B1.10 and § 3553(a).

A defendant has no absolute right to § 3582(c)(2) relief, inasmuch as "a § 3582(c)(2) sentence modification is discretionary." *United States v. Speights*, 561 F. Supp.2d 1277, 1279 (S.D. Ala. 2008).[2] A court should not grant a § 3582(c)(2) modification for every eligible defendant as a matter of course, but instead must consider the factors set forth in 18 U.S.C. § 3553(a) to assess whether a reduction is warranted and, if so, to what extent. *See* 18 U.S.C. § 3582(c)(2) (authorizing court to reduce sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable"); *United States v. Bravo*, 203 F.3d 778, 781 (11th Cir. 2000) ("This decision should be made in light of the factors listed in 18 U.S.C. § 3553(a)."). Further, the Application Notes to U.S.S.G. § 1B1.10 instruct that, in addition to the § 3553(a) factors, courts contemplating whether to reduce a term of imprisonment as a result of an amended guideline range "shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment," and "may consider post-sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment." § 1B1.10, at Application Note 1(B)(ii)-(iii).

      Upon review of Patterson's prison disciplinary record as summarized in the Probation Office's report dated July 29, 2008 (doc. 344), the undersigned entered an Order (doc. 345) expressing concern that factors of public safety and post-sentencing conduct may impact Patterson's § 3582(c)(2) Motion and directing the parties to submit written memoranda on that issue. The Court specifically instructed that these memoranda must be "supported by facts, exhibits, and legal authority as appropriate." The parties have now submitted their respective briefs, and the § 3582(c)(2) Motion is ripe for disposition.

      By any metric, Patterson's prison disciplinary record is dismal. A Progress Report from the Bureau of Prisons dated July 29, 2008 reflects a pattern of misconduct, including more than 25 incident reports between May 1997 and June 2008. This is an extraordinary number;

---

    [2]    *See also United States v. Bravo*, 203 F.3d 778, 780 (11th Cir. 2000) ("Under 18 U.S.C. § 3582(c)(2), a district court has discretion to reduce the term of imprisonment of an already incarcerated defendant ...."); *Vautier*, 144 F.3d at 760 ("Both the language of § 3582(c)(2) and this circuit's precedent indicate that the sentencing court's power to reduce a sentence is discretionary."); *United States v. Denmark*, 534 F. Supp.2d 1245, 1247 (N.D. Fla. 2008) (in context of § 3582 motion under Amendment 706, "[a]ny reduction is discretionary").

however, their frequency is nearly matched by their severity, with Patterson's violations traversing realms of violence, sexual misconduct, and disobedience.  Of these three categories, the sexual misconduct grouping is far and away the largest.  No fewer than 15 times during the period of concern, Patterson has been found by the Bureau of Prisons to have engaged in indecent exposure and/or sexual acts, with all or nearly all of these incidents involving masturbation in the presence of female corrections officers performing routine rounds.  The BOP reports suggest that many of these incidents were accompanied by a disturbing undercurrent of intimidation or sexual predation, as Patterson often stared at these female prison employees while openly exposing himself and engaging in self-gratification.  In addition, Patterson's prison resume displays a propensity for violence, including two counts of fighting, one count of possessing a dangerous weapon, two counts of threatening bodily harm (with one such threat involving the statement, "The first chance I get, I am gonna push some steel into the first somebody I can," whether it be corrections staff or inmate, "y'all will see"), and one count of assault without serious injury.  Finally, Patterson has displayed a propensity for disobeying orders and being insolent to corrections staff, with the most recent incident occurring in June 2008, mere weeks before he filed his § 3582 Motion.

  Taken in the aggregate, these incidents suggest that Patterson has continued on a path of violence, sexual misconduct and lawlessness even many years after being convicted and sentenced in this case.  Such occurrences are deeply troubling, particularly in light of this Court's responsibility to consider the danger to the community and its discretion to consider post-sentencing conduct in assessing whether a § 3582(c)(2) reduction is appropriate.

  The legal impact of Patterson's prison record on his § 3582(c)(2) motion is potentially quite significant.  Indeed, other courts have exercised their discretion to deny sentence modifications in whole or in part based on more moderate prison disciplinary records than Patterson's.  *See, e.g., United States v. Fisher*, 2008 WL 2704841, *2 (S.D. Miss. July 7, 2008) (denying § 3582(c)(2) motion based on prison disciplinary record of smoking marijuana, being absent from his work assignment, and leaving work without permission); *United States v. Reynolds*, 2008 WL 2367254, *4 (S.D.W.Va. June 9, 2008) (denying § 3582(c)(2) motion based on defendant's laundry list of disciplinary incidents, including threats of violence and insubordination, while in prison); *United States v. Stevenson*, 2008 WL 1840758, *1 (S.D. Ohio

Apr. 22, 2008) (denying § 3582(c)(2) motion based, in part, on two post-sentencing disciplinary violations that resulted in loss of defendant's visiting privileges, commissary privileges, and job); *United States v. Miller*, 2008 WL 782566, *4 (E.D. Tenn. Mar. 21, 2008) (reducing the extent of relief granted to defendant under § 3582(c)(2) based on post-sentencing conduct consisting of one incident of possessing intoxicants and one incident of using drugs).

In response, Patterson would have the Court find that he has learned the error of his ways and that he has put all of that misconduct behind him. In support of this contention, Patterson relies on the following: (a) the recent dropoff in incident reports, inasmuch as he has been formally disciplined only once (for insolence) in the last two years; (b) his commitment to his minor daughter and his promise to his late father to remain out of prison; and (c) his successful completion of USP Florence's "Challenge Program" in December 2007.

While these factors do weigh into the Court's decisionmaking calculus pursuant to § 1B1.10 and § 3553(a), they are not persuasive in the context of Patterson's individual circumstances, taken as a whole. It would be inaccurate to characterize his prison disciplinary violations as ancient history; to the contrary, his most recent acts of sexual misconduct, fighting and possessing a dangerous weapon have occurred within the last five years. His most recent run-in with prison authorities occurred just three months ago, when he became angry and aggressive while being escorted to the unit showers, unleashed a profane tirade on prison staff, and after being placed in the shower with restraints removed stated, "Open this door and I'll show you what I mean," which the officer perceived as a threat.[3] After careful review of Patterson's prison disciplinary record, the Court has no confidence that his days of serious infractions are over. More generally, the sheer volume of Patterson's disciplinary violations (totaling more than two dozen over the last 11 years) and in particular his recurrent sexual and violent misconduct paints a much different picture about the danger he poses to the community than his present assurances of mending his ways. And his June 2008 infraction reveals that, notwithstanding his commendable completion of the Challenge Program, Patterson continues to

---

[3] BOP records reflect that Patterson admitted to all of this conduct except for the last statement; however, even if that comment were excluded, Patterson's acts still reflect disrespect and hostility to corrections staff.

be unwilling to abide by prison rules.

In sum, the Court has carefully considered all of the § 3553(a) factors and the argument and evidence submitted by the parties. The Court has also specifically considered the nature and seriousness of any danger to the community, and Patterson's post-sentencing conduct, pursuant to § 1B1.10. Since March 3, 2008, when Amendment 706 became retroactive, this Court has had occasion to review dozens of crack cocaine defendants' prison disciplinary histories in connection with their § 3582(c)(2) motions for modification of sentence. Patterson's disciplinary record ranks among the worst that the Court has reviewed. Given his pattern of disregarding authority and his recurrent participation in sexual and violent misconduct while serving his prison sentence, the Court finds that Patterson poses a danger to the community and has displayed post-sentencing conduct that weighs heavily against exercising discretion in favor of granting any § 3582(c)(2) relief. The Court has considered the evidence offered by Patterson, including the importance of his family, his completion of the Challenge Program, and the reduced frequency of infractions in the last two years. Nonetheless, the Court finds that the nature and seriousness of the danger to the community, as well as Patterson's post-sentencing conduct, outweigh all other § 3553(a) considerations in the specific circumstances of this case.

For these reasons, in the Court's discretion, Patterson's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (doc. 339 ) is **denied**.[4]

---

[4] Patterson did not request an evidentiary hearing in connection with his motion for reduction of sentence. Even if he had done so, however, no hearing would be warranted. After all, hearings are not typically required or granted with respect to § 3582(c)(2) motions. *See, e.g., United States v. Rincon*, 2006 WL 3690664, *1 (11th Cir. Dec. 14, 2006) (rejecting as meritless argument that district court must hold a hearing before ruling on § 3582(c)(2) motion); *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) ("[A] judge need not hold a hearing when considering a § 3582(c) motion."); *United States v. Johnson*, 556 F. Supp.2d 563, 571 (W.D. Va. 2008) (same); *United States v. May*, 2008 WL 2790212, *3 (S.D. Ala. July 18, 2008) (similar). More importantly, a central purpose of the focused briefing ordered by this Court was to furnish defendant an opportunity to present in writing his evidence on these issues. The Order directing the parties to submit briefs specifically referenced that those filings should be "supported by facts [and] exhibits," and allowed a 30-day period for them to marshal and submit whatever evidence they wished. Absent any indication of material disputed facts, an evidentiary hearing would be unnecessary and unhelpful to the Court's review of this § 3582(c)(2) motion.

**DONE** and **ORDERED** this 24th day of September, 2008.

                                                  s/ WILLIAM H. STEELE
                                                  UNITED STATES DISTRICT JUDGE